IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 3, 2019 Session

## SUSAN SCOTT DAVIS v. BOBBY TEX HENRY

**Appeal from the Knox County Chancery Court**
**No. 194608-3          Michael W. Moyers, Chancellor**

_____

## No. E2019-00365-COA-R3-CV

_____

This appeal arose from the trial court's final order denying the father's motion to set aside a prior agreed parentage order and agreed permanent parenting plan order ("PPP") entered into by the father and the mother. The trial court determined that under relevant case law, it had "no duty to conduct any further hearing" regarding the parentage order and PPP because the court had on previous occasions conducted multiple hearings. The father subsequently appealed the trial court's final order, claiming, *inter alia*, that the trial court failed to make specific findings of fact regarding the best interest of the minor child. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and CARMA DENNIS MCGEE, JJ., joined.

Kevin W. Shepherd, Maryville, Tennessee, for the appellant, Bobby Tex Henry.

Cecilia S. Petersen and Elizabeth K. B. Meadows, Knoxville, Tennessee, for the appellee, Susan Scott Davis.

## OPINION

### I. Factual and Procedural Background

The appellant, Bobby Tex Henry ("Father"), and the appellee, Susan Scott Davis ("Mother"), were never married. Mother gave birth to the parties' minor child ("the Child") in August 2017. On October 2, 2017, Mother filed a complaint to establish parentage, asserting, *inter alia*, that Father was the biological father of the Child. Mother requested that the trial court enter a parentage order declaring Father "to be the biological

father of the minor child . . . for the purposes of inheritance, support, and all other lawful purposes."

The parties subsequently entered into an agreed parentage order wherein Father, acting *pro se*, acknowledged that he was the biological father of the Child.[1]  This order, which was executed by both parties before a notary public, stated:

[Mother] and [Father] expressly certify and acknowledge that they have entered into this Agreement upon mature consideration.  Consent to the execution of this Agreement has not been obtained by duress, fraud, or undue influence by any person, but the parties acknowledge and represent that they have voluntarily, knowingly and willingly entered into this Agreement.

The trial court entered the parties' agreed parentage order on October 11, 2017.  In its agreed order the court, *inter alia*, awarded to Mother child support in the amount of $774.00 per month.  The parties concomitantly entered into the PPP, wherein Father agreed to exercise zero days of residential co-parenting time with the Child.  The PPP further provided that any co-parenting time Father exercised would be "only by agreement of the Mother."  Mother was also granted all decision-making authority regarding the Child.  The parties signed the PPP in the presence of a notary public, declaring under penalty of perjury, that the PPP had been "proposed in good faith and [was] in the best interest of each minor child."  On October 11, 2017, the trial court conducted a chambers hearing in which both parties had the opportunity to attend and Mother answered specific questions regarding the Child's best interest.  Following the hearing, the trial court approved and entered the PPP.

On May 29, 2018, Father filed a motion, pursuant to Tennessee Rule of Civil Procedure 60.02, requesting that the trial court set aside the parties' agreed parentage order and PPP.  In his motion, Father averred, *inter alia*, that "Mother was Father's boss" at his employment and that "Mother threatened to reveal [the] parties' affair to Father's wife if Father did not sign the Agreed Parentage Order and Permanent Parenting Plan Order."  As a consequence, Father claimed he "reluctantly agreed to the Parentage Order and the Parenting Plan [to] avoid losing his job and having his wife find out about his affair."  Father further "aver[red] that Mother exerted duress upon Father to obtain the aforementioned Parentage Order and Parenting Plan through her superior status at his place of employment and ability to impede his ability to work [at] said place of employment."  Father additionally claimed that the trial court "failed to make specific findings of fact to support the conclusory statement that the parties' Permanent Parenting Plan is in the best interest of [the Child]," and that "the current Parenting Plan violates

---

[1] In the Agreed Parentage Order, Father "acknowledge[d] that he is the natural and legal father of [the Child]."

public policy of Tennessee and is clearly not in [the Child's] best interest."

Mother filed her response to Father's motion on July 18, 2018, requesting that the trial court deny Father's motion. Mother denied that she was Father's boss or that she exerted duress on Father and threatened to reveal the parties' relationship to Father's wife if Father did not sign the parentage order and PPP. Mother asserted that Father's job was never in jeopardy and that she "had been in contact with Father's wife who knew about the affair." Mother also stated that she appeared before the trial court on October 11, 2017, and testified that the PPP was in the Child's best interest. Mother posited that the parties agreed on the best interest issue, based on the language of the signed PPP. According to Mother, the trial court also found the PPP to be in the Child's best interest at the time of its entry.

On August 10, 2018, the trial court entered an order holding Father's motion in abeyance until a hearing could be held. Following a hearing conducted on December 18, 2018, the trial court entered a final order on January 25, 2019, denying Father's Rule 60 motion. Father timely appealed. On February 22, 2019, Father filed a "Designation of Record" indicating that he would not be filing a transcript.

## II.  Issue Presented

Father presents a single issue on appeal, which we have restated as follows:

Whether the trial court erred by denying Father's motion to set aside the agreed PPP when the trial court did not make specific findings of fact regarding the best interest of the Child.

## III.  Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 360 (Tenn. 2011).

Our Supreme Court has previously explained the standard of review applicable to requests for relief filed pursuant to Tennessee Rule of Civil Procedure 60.02 as whether the trial court abused its discretion. *See Turner v. Turner*, 473 S.W.3d 257, 268 (Tenn. 2015).[2] A trial court abuses its discretion only when it applies an incorrect legal standard, reaches an illogical result, commits clear error in its assessment of the evidence, or relies upon flawed reasoning that results in an injustice. *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013). "The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

IV. Request for Relief from a Final Judgment

In his May 29, 2018 motion, Father relied on Tennessee Rule of Civil Procedure 60.02 as a basis for relief from the trial court's entry of the PPP. However, Father has not specified the subsection of Rule 60.02 upon which he relies before either the trial court or on appeal. As our Supreme Court has recently elucidated concerning relief from final judgments or orders under Tennessee Rule of Civil Procedure 60 generally:

> A judgment or order of final disposition that adjudicates the rights and claims of all the parties to an action becomes final thirty days after it is entered. *See* Tenn. R. Civ. P. 58, 59; *see also* Tenn. R. Civ. P. 54; Tenn. R. App. P. (3)(a); *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 133 (Tenn. 2013). Within thirty days of entry of an order, a party may seek relief from the order by filing a motion under Tennessee Rule of Civil Procedure 59.02. *Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012). A party who waits more than thirty days after entry of an order to seek relief must do so under Rule 60.02. *Id.* (citing *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977)).

> Rule 60.02 allows relief from a final order under limited circumstances. The general purpose of Rule 60.02 is "to alleviate the effect of an oppressive or onerous final judgment." *Black v. Black*, 166 S.W.3d 699, 703 (Tenn. 2005) (quoting *Killion v. Dep't of Human Servs.*, 845 S.W.2d 212, 213 (Tenn. 1992)) (internal quotation marks omitted). Rule 60.02 aims "to strike a proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). Relief under Rule 60.02 is not available to a party whose circumstances change after entry of the judgment or to a party "dissatisfied

---

[2] The exception to utilization of the abuse of discretion standard when reviewing a Rule 60.02 motion occurs when a party seeks relief from a judgment under Tennessee Rule of Civil Procedure 60.02(3), which states that a court may relieve a party from a final judgment if "the judgment is void." Tenn. R. Civ. P. 60.02(3). We review a trial court's ruling on a request for relief under Rule 60.02(3) *de novo* with no presumption of correctness. *See Turner*, 473 S.W.3d at 269.

- 4 -

with a particular outcome." *Furlough*, 397 S.W.3d at 127-28 (Tenn. 2013) (quoting *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 336 (Tenn. 2010)) (internal quotation marks omitted). Rule 60.02 is "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). This escape valve "should not be easily opened." *Furlough*, 397 S.W.3d at 127 (quoting *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991)) (internal quotation marks omitted).

Rule 60.02 provides that after an order is final, a court may relieve a party from a final judgment "[o]n motion and upon such terms as are just," based on the following grounds:

> (1) mistake, inadvertence, surprise or excusable neglect;
>
> (2) fraud . . ., misrepresentation, or other misconduct of an adverse party;
>
> (3) the judgment is void;
>
> (4) the judgment has been satisfied, released or discharged . . . or
>
> (5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02. Motions made under Rule 60.02 must be filed within a "reasonable time," except that motions brought under (1) and (2) must be filed within one year after entry of the judgment. *Id*. Motions under subsection (3) are not subject to the reasonable time filing requirement, but relief "may be denied if certain exceptional circumstances exist." *Turner v. Turner*, 473 S.W.3d 257, 279 (Tenn. 2015).

To obtain relief under Rule 60.02, the moving party "must describe the basis of relief with specificity," *Minor Miracle Prods., LLC v. Starkey*, No. M2011-00072-COA-R3-CV, 2012 WL 112593, at *7 (Tenn. Ct. App. Jan. 12, 2012) (citing *Hopkins v. Hopkins*, 572 S.W.2d 639, 640 (Tenn. 1978)), and establish by clear and convincing evidence that she is entitled to relief. *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997). "Evidence is clear and convincing when it leaves 'no serious or substantial doubt about the correctness of the conclusions drawn.'" *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d

175, 187 (Tenn. 2009) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

*Hussey v. Woods*, 538 S.W.3d 476, 482-83 (Tenn. 2017).

On appeal, Father asserts that "the Trial Court failed to make specific findings of fact to support the conclusory statements that the parties' [PPP] is in the best interest of [the Child]."[3] In its final order, the trial court stated in relevant part:

> 1) [T]hat a chambers hearing was held on October 11, 2017 at which time both [Mother] and [Father] had the opportunity to attend; 2) that at the October 11, 2017 hearing, specific questions were asked of the [Mother] regarding the child's best interests; 3) that under the case of <u>Stricklin vs. Stricklin</u>, 490 S.W.3d 8 (Tenn. [Ct.] App. 2015) the Court had no duty to conduct any further hearing; and 4) that based on the representation of the parties as set forth in the Agreed Permanent Parenting Plan Order and the testimony of the [Mother], the Court now finds that the entry of the [PPP] was in the best interest of the minor child.

Father posits that parents cannot unilaterally establish that a particular custody arrangement is in the best interest of the child because "[s]uch [a] plan must be reviewed by the Court and the Court must make specific findings of fact." He postulates that the trial court did not make specific findings of fact. In support of his argument, Father primarily relies on this Court's decisions in *Stricklin v. Stricklin*, 490 S.W.3d 8 (Tenn. Ct. App. 2015), and *Fletcher v. Fletcher*, No. M2010-01777-COA-R3-CV, 2011 WL 4447903 (Tenn. Ct. App. Sept. 26, 2011). He does not, however, explain how his argument pertains to a specific subsection of Rule 60. Upon careful review, we determine that *Stricklin* and *Fletcher* are distinguishable from the case at bar because we conclude that the trial court made sufficient findings of fact to support its best interest determination.

In *Fletcher*, the parties executed an agreed permanent parenting plan, but before the order was entered by the trial court, the parenting plan was repudiated by the mother, who requested a hearing concerning the best interest of the children. *Id*. at *1. The trial court denied the mother's request and subsequently entered the permanent parenting plan to which the mother had previously agreed. *Id*. On appeal, this Court reversed the trial court's entry of the order and remanded the case to the trial court for an evidentiary hearing concerning whether the parenting arrangement embodied in the permanent parenting plan was in the best interest of the children. *Id*. In doing so, this Court held

---

[3] We note that in the instant action, Father did not file a motion for amended or additional findings pursuant to Tennessee Rule of Civil Procedure 52.02, which in any event would have been untimely following thirty days after entry of the final judgment.

that the trial court abused its discretion by finding that the parenting arrangement in the mediated agreement was in the children's best interest in the absence of evidence to support such a finding. *Id*. at *10. This Court explained, however, that "[w]e do not hold that, in *every* instance in which a trial court is presented with a mediated parenting plan, the trial court must conduct a full evidentiary hearing." *Id*. Having determined that the trial court made sufficient findings of fact in this action, we further determine Father's reliance on *Fletcher* to be unavailing.

Father also relies on *Stricklin v. Stricklin*, 490 S.W.3d 8 (Tenn. Ct. App. 2015), for his proposition that "for a custody Order to stand, the Trial Judge must make specific findings of fact, making the record easily and readily reviewable by an [Appellate] Court, regarding the best interest determination." As was the case with *Fletcher*, the action at bar is distinguishable from *Stricklin*. In *Stricklin*, the mother filed a motion to modify the parties' permanent parenting plan, and the trial court conducted a hearing wherein the parties announced, following a recess, that they had come to an agreement regarding the terms of a new permanent parenting plan. *Id*. at 14. The agreed-upon terms were announced by the parties' counsel in the presence of the parties in open court. *Id*. Following the parties' announcement, the trial court made "oral rulings" on three unresolved issues which were unrelated to the appeal. *Id*. at 10. Following these rulings, the trial court subsequently approved the modified permanent parenting plan and entered it as an order, stating in its closing comments, "I'm glad that y'all were able to work this out for the best interest of the child." *Id*.

Within thirty days of the modified parenting plan's entry in *Stricklin*, the father filed a motion stating that he did not consent to the terms of the plan and wished to set the trial court's order aside. *Id*. at 10. The trial court denied the father's motion. *Id*. On appeal, this Court vacated the trial court's decision and remanded for further proceedings based on the legal insufficiency of the trial court's order. *Id*. at 18. The *Stricklin* Court determined the trial court's order to be insufficient because the trial court did not make a specific finding as to whether the agreed-upon terms were in the child's best interest. *Id*. at 18. This Court expressly noted that the record in that matter was devoid of sufficient findings that reflected whether the judge considered the agreement to be in the child's best interest because other than the judge's closing comments, "there [was] no other discussion on the issue of the child's best interests." *Id*. This Court further noted that even after the trial court was alerted that its order lacked findings on the best interest issue, the trial court failed to cure its error. *Id*.

In the case at bar, the trial court made a best interest determination upon Father's Rule 60.02 motion. In its final order denying Father's Rule 60.02 motion, the trial court stated and the record reflects that a chambers hearing was held on October 11, 2017, during which testimony was presented by Mother regarding the Child's best interest. In *Stricklin*, no such evidence was presented to the trial court. *See id*. Furthermore, unlike the trial court in *Stricklin*, the trial court here expressly stated in its January 25, 2019

order that it found "that the entry of the [PPP] was in the best interest of the minor child" based upon the evidence that had been presented. *See id*. As evidence supporting that the PPP was in the Child's best interest and in addition to Mother's testimony on the issue, the trial court considered the fact that Mother and Father declared in the presence of a notary public, under penalty of perjury, that the PPP was "in the best interest of each minor child." In *Stricklin*, the trial court did not consider any such evidence when making its best interest determination. *See id*. Ergo, we find *Stricklin* to be distinguishable.

The trial court herein further determined that, pursuant to the *Stricklin* decision, it had no duty to conduct any further hearing. Upon our thorough review of the record, we agree. The trial court considered evidence concerning the Child's best interest and found that the PPP was in the Child's best interest. As such, the trial court satisfied its "solemn duty to determine whether a given parenting arrangement is in the best interest of a child in his charge." *See Stricklin*, 490 S.W.3d at 18; *Fletcher*, 2011 WL 4447903, at *10. Moreover, we emphasize that Father never specified the particular subsection of Rule 60.02 upon which he sought to rely as a basis for relief from the trial court's final order. We will, however, analyze Father's argument as it relates to each subsection in turn.

Concerning the first subsection of Tennessee Rule of Civil Procedure 60.02, such a claim typically requires demonstration of a procedural defect, *see Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003) (concluding that there was a procedural defect based on a lack of notice), or a mistake of fact, *see In re T.M.S.*, No. W2012-02220-COA-R3-JV, 2013 WL 3422975 (Tenn. Ct. App. July 8, 2013) (concluding that the petitioner demonstrated a mistake of fact where he voluntarily agreed to child support despite the fact that he was not sure of his parentage and later learned that he was not the child's biological father). Assuming, *arguendo*, that Father is asserting that insufficient findings of fact would constitute a procedural defect, we determine that they do not. *See generally Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976) (distinguishing a procedural law from a substantive law by defining procedure as "the mode or proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right . . . including pleading, process, evidence, and practice."); BLACK'S LAW DICTIONARY 1241 (8th ed. 2004) (defining procedure as a "specific method or course of action; the judicial rule or manner for carrying on a civil lawsuit or criminal prosecution."). In any case, we have determined that Father has failed to present any substantive argument regarding "mistake, inadvertence, surprise or excusable neglect," relative to Rule 60.02(1). We therefore conclude that Father has not established that he is entitled to relief by reason of this subsection.

Concerning Rule 60.02(2), Father claimed in his May 29, 2018 motion that "Mother exerted duress upon Father to obtain the . . . Parentage Order and [PPP] through her superior status at [Father's] place of employment" and "via the promise of keeping the extra-marital affair and birth of the [Child] hidden from [Father's] wife." In his brief

on appeal, however, Father appears to have abandoned this argument, instead asserting that the trial court erred by not making specific findings of fact. Inasmuch as Father has failed to present any substantive argument concerning alleged duress in his appellate brief, any reliance upon Rule 60.02(2) is deemed waived. *See Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) (citing *England v. Burns Stone Co., Inc.*, 874 S.W.3d 32, 35 (Tenn. Ct. App. 1993)).

Regarding Rule 60.02(3), Father presents no substantive argument regarding voidness of the trial court's order. Instead, he argues that the PPP "fails to meet the requirements of law for specific findings of fact" concerning the best interest of the Child. As our Supreme Court has stated with regard to Rule 60.02(3), "a judgment is void if it appears on the face of the record itself that the court lacked subject matter jurisdiction, the judgment was outside of the pleadings, or the court lacked jurisdiction over the parties." *Hussey*, 538 S.W.3d at 483 (quoting *Turner*, 473 S.W.3d at 270). Based on our *de novo* review of the record, Father has not demonstrated any basis for a determination that the PPP was void. *See McCracken*, 958 S.W.2d at 795. We conclude that Father is not entitled to relief pursuant to Rule 60.02(3).

Likewise, Father has failed to present any argument, pursuant to Tennessee Rule of Civil Procedure 60.02(4), that the PPP "has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have a prospective application." *See* Tenn. R. Civ. P. 60.02(4). As such, we conclude that Father is not entitled to relief pursuant to Tennessee Rule of Civil Procedure 60.02(4).

Finally, with respect to Tennessee Rule of Civil Procedure 60.02(5), our Supreme court has elucidated:

> Rule 60.02(5) functions as a catch-all to provide equitable relief when relief is not available under the other subsections. *Duncan v. Duncan*, 789 S.W.2d 557, 564 (Tenn. Ct. App. 1990). Its language is open-ended but subject to a narrow interpretation. *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993). The rule "affords relief in the most extreme, unique, exceptional, or extraordinary cases and generally applies to only circumstances other than those contemplated in sections (1) through (4) of Rule 60.02." *Furlough*, 397 S.W.3d at 128 (quoting *Holiday v. Shoney's South, Inc.*, 42 S.W.3d 90, 94 (Tenn. Ct. App. 2000) (internal quotation marks omitted). Reasons justifying relief are found only "in cases of overwhelming importance or in cases involving extraordinary circumstances or extreme hardship." *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000) (citing *Underwood*, 854 S.W.2d at 97).
>
> The standards of Rule 60.02(5) are more demanding than those

applicable to the other grounds for Rule 60.02 relief. *In re Joeda J.*, 300 S.W.3d 710, 716 (Tenn. Ct. App. 2009) (quoting *Wilkerson v. PFC Global Grp., Inc.*, No. E2003-00362-COA-R3-CV, 2003 WL 22415359, at *9 (Tenn. Ct. App. Oct. 23, 2003)). "The bar for obtaining relief is set very high," and the moving party bears a heavy burden. *DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005) (citing *Johnson v. Johnson*, 37 S.W.3d 892, 895 n.2 (Tenn. 2001), *overruled by Howell v. Howell*, __U.S.__, 137 S.Ct. 1400, 197 L.Ed.2d 781 (2017)). A Rule 60.02(5) motion "is not to be used to relieve a party from 'free, calculated, and deliberate choices he has made;' a party remains under a duty to take legal steps to protect his own interests." *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 19 (Tenn. 1991) (quoting *Cain* [*v. Macklin*], 663 S.W.2d [794, 796 (Tenn. 1948)]).

*Hussey*, 538 S.W.3d at 485-86 (footnote omitted). Moreover, a party seeking relief under Rule 60.02(5) must demonstrate that he or she is entitled to relief by clear and convincing evidence. *Henderson*, 318 S.W.3d at 336. Our High Court has also made clear that "Rule 60.02 does not permit a litigant to . . . relitigate issues long since laid to rest." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990).

Father has failed to demonstrate, pursuant to Rule 60.02(5), that the matter before us presents an "extreme, unique, exceptional, or extraordinary case[]." *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 128 (Tenn. 2013). Furthermore, Father may not rely on Rule 60.02(5) to provide relief from his "free, calculated, and deliberate choices he has made." *See Cain v. Macklin*, 663 S.W.2d 794, 796 (Tenn. 1948). As with the previous subsections of Tennessee Rule of Civil Procedure 60.02, we conclude that Father is not entitled to relief pursuant to Rule 60.02(5).

Upon our thorough review of the record, we determine that the trial court did not err in denying Father's Rule 60.02 motion. The trial court did not apply an incorrect legal standard, reach an illogical result, commit clear error in its assessment of the evidence, or rely on flawed reasoning. *See In re Baby*, 447 S.W.3d 807, 817 (Tenn. 2014). We conclude that the facts of this case do not rise to the level of "extraordinary circumstances" or extreme hardship justifying relief under Rule 60.02(5). *See Hussey*, 538 S.W.3d at 486. Rather, Father is attempting to "relitigate issues long since laid to rest." *See Thompson*, 798 S.W.2d at 238. We therefore affirm the trial court's denial of Father's Rule 60.02 motion.[4]

---

[4] We note that Father additionally contends that the PPP violates the public policy of the State of Tennessee. We determine this argument to be unavailing. We conclude that the PPP has not been shown to violate the public policy of the applicable statutory scheme. *See* Tenn. Code. Ann. § 36-6-401, *et seq.* (2017 and Supp. 2019).

### V. Conclusion

For the foregoing reasons, we determine that the trial court did not err in denying Father's Rule 60.02 motion, and we affirm the trial court's judgment in this action. This case is remanded to the trial court for enforcement of the judgment and collection of costs below. Costs on appeal are taxed to the appellant, Bobby Tex Henry.

_____

THOMAS R. FRIERSON, II, JUDGE